IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA

| | | |
|---|---|---|
| Delvin Lamont Shaw, | ) | |
| | ) | |
| Plaintiff, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| vs. | ) | |
| | ) | |
| Grand Forks Police Department, Steve Conley, and Mike Jennings, | ) ) | |
| | ) | Case No. 4:15-cv-181 |
| Defendants. | ) | |

Plaintiff Delvin Lamont Shaw ("Shaw") is an inmate at the North Dakota State Penitentiary. His complaint is now before the court for review as mandated by 28 U.S.C. §1915A.

## I. BACKGROUND

Shaw initiated this action in December 2015 with the submission of a *pro se* complaint alleging:

> Illegal search on 6/26/14 of my belongings
>
> Steve Conley a Grand Forks Police Officer was the head Detective in Case #18-2014-CR-013910. On the date of 10/6/14 Mr. Conley lied in my preliminary hearing saying my co-defendant told him in a interview that I own a 380 auto handgun the same time of gun that was used in this case. Also in a interview by Mr. Conley 2/22/15 he asked my co-defendant to lie on me by saying he seen blood in a car and on me. While in trial 6/22/15 Mr. Conley lied about tampering with witnesses also about not filling out evidence inventory sheet for this case. Mike Jennings lied also while testifying saying that a pretext phone call in this case was not altered by him. This trial took place Grand Forks District courtroom Shaw vs State of North Dakota under the charges murder & burglary. These officers testified as exert witnesses in this case, because of these officers actions, I was sentenced to life without Parole!

(Docket No. 4) (errors in original). In his prayer for relief, Shaw requests "justice for all [his] pain and suffering" and to "have Mr. Conley and Mr. Jennings charged with perjury and tampering with evidence." (Id.).

1

## II. STANDARDS GOVERNING INITIAL REVIEW

When a prisoner proceeding in forma pauperis seeks to sue a governmental entity, officer, or employee, the Prison Litigation Reform Act of 1995 ("PLRA") requires the court to conduct an early screening of the complaint to weed out claims that clearly lack merit with the hope this will help to lessen the burdens imposed by the ever-rising number of prisoner suits, which too often are frivolous and without merit. Jones v. Bock, 549 U.S. 199, 202-03 (2007); Woodford v. Ngo, 548 U.S. 81, 83-84 (2006). In conducting the screening required by 28 U.S.C. § 1915A, the court is required to identify any cognizable claims and to dismiss the complaint, or any part of it, that is frivolous, malicious, fails to state a claim, or seeks monetary relief from an immune defendant.

Neither 42 U.S.C. § 1983 nor the PLRA imposes any heightened pleading requirements. Jones v. Bock, 549 U.S. at 211-12. Consequently, in order to state a cognizable claim, the complaint need only meet the minimum requirements of Fed. R. Civ. P. 8(a)(2), which are that it contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam).

The court is obligated to construe a *pro se* complaint liberally and hold it to a less stringent standard than what normally would be required of attorneys. Id.; see also Federal Express Corp. v. Holowecki, 552 U.S. 389, 402 (2008); Solomon v. Petray, 795 F.3d 777, 787 (8th Cir. 2015). This does not mean that the court must accept everything or anything that is filed by *pro se* prisoners, however. In enacting the screening requirement, Congress obviously expected it to be more than a ritualistic exercise and that courts would only allow to go forward those claims that are cognizable, that seek relief from a non-immune party, and that are not obviously frivolous or malicious

To meet the minimal pleading requirements of Rule 8(a)(2) for stating a cognizable claim, something more is required than simply expressing a desire for relief and declaring an entitlement to it. See Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 n.3 (2007) ("Bell Atlantic"). The complaint must state enough to "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. at 93 (quoting Bell Atlantic, 550 U.S. at 555). And, even though the complaint is to be liberally construed, it must also contain enough to satisfy Bell Atlantic's "plausibility standard." E.g., Ventura-Vera v. Dewitt, 417 Fed.Appx. 591, 592, 2011 WL 2184269, *1 (8th Cir. 2011) (unpublished per curiam) (citing Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2007) for the appropriate post-Bell Atlantic standard); see also Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004) (*pro se* complaints must allege sufficient facts to state a claim). Complaints that offer nothing more than labels and conclusions or a formulaic recitation of the elements are not sufficient. See id. Frivolous claims are those that are clearly baseless, fanciful, fantastic, or delusional. See Denton v. Hernandez, 504 U.S. 25, 32-34 (1992).

To state a cognizable claim under § 1983, a plaintiff must normally allege a violation of a right secured by the Constitution or the laws of the United States and that the alleged deprivation was committed by a person acting under color of state law. West v. Atkins, 487 U.S. 42, 48 (1988); Walker v. Reed, 104 F.3d 156, 157 (8th Cir. 1997). Even under liberal pleading standards, a *pro se* litigant, at the very least, must invoke rights under the Constitution or federal law in order to plead a § 1983 claim. Walker v. Reed, 104 F.3d at 157-58.

Finally, personal involvement of a defendant is a prerequisite to liability under § 1983 since there is no *respondeat superior* liability under this section. See Ashcroft v. Iqbal, 556 U.S. 662, 676-77 (2009); Gordon v. Hansen, 168 F.3d 1109, 1113 (8th Cir. 1999). Consequently, the

3

complaint must allege facts that tend to show that an individual defendant was personally involved to allow the suit to proceed against that individual. See, e.g., Blackmon v. Lombardi, 527 Fed.Appx. 583, 584-85 (8th Cir. 2013).

## III. DISCUSSION

### A. What this case cannot be about

As noted above, Shaw requests that he be given "justice for all [his] pain and suffering" resulting from his imprisonment. If by "justice" Shaw is thinking he may be able to obtain his release by this action, he is mistaken. This is because release is not a permissible form of relief in a § 1983 civil rights action. As the United States Supreme Court explained in Wilkinson v. Dotson, 544 U.S. 74 (2005):

> This Court has held that a prisoner in state custody cannot use a § 1983 action to challenge "the fact or duration of his confinement." [citations omitted] He must seek federal habeas corpus relief (or appropriate state relief) instead.

Id. at 78.[1]

Shaw also demands the criminal prosecution of Conley and Jennings. The problem with this is that Shaw has no federal constitutional right to a criminal investigation or prosecution. See Linda R.S. v. Richard D., 410 U.S. 614, 619 (1973) ("a private citizen lacks a judicially cognizable interest in the prosecution or nonprosecution of another"); Parkhurst v. Tabor, 569 F.3d 861, 865-67 (8th Cir. 2009) (crime victims lack standing to compel a criminal prosecution); see also Smith v. Shaw, No. 5:09–01001, 2012 WL 1832340, at * 1 (S.D. W.Va. April 25, 2012) (citing numerous cases).

---

[1] Absent some affirmative statement on Shaw's part, the court should not treat his complaint as a petition for federal habeas relief for several reasons. First, he has not asked for federal habeas relief. Second, federal habeas relief would likely be premature if Shaw has not yet raised his claims of federal constitutional violations in the state courts and a check of publically available records suggests that Shaw is now in the process of appealing his conviction to the North Dakota Supreme Court. Third, filing a federal habeas petition prematurely can have negative consequences given the disfavor placed upon multiple federal habeas petitions.

4

Also, the court does not have the authority to direct that an individual be prosecuted. See United States v. Batchelder, 442 U.S. 114, 124 (1979) (the decisions of whether to prosecute and what charges to file rest in the prosecutor's discretion); see also Inmates of Attica Corr. Facility v. Rockefeller, 447 F.2d 375 (2nd Cir.1973) (the authority to investigate and initiate criminal complaints rest exclusively with the United States Attorney); Young v. Harold, No. 04CV245WOB, 2005 WL 1048117, at *8 (E.D. Ky. May 3, 2005) (opining that federal courts have no authority to initiate criminal proceedings).

### B. Shaw's claims of perjury and conspiracy to falsify evidence

In Briscoe v. LaHue, the United States Supreme Court concluded that witnesses, including police officers, are entitled to absolute immunity from a claim for damages pursuant to § 1983 for having committed perjury while testifying at trial. 460 U.S. 325, 335-44 (1983). Subsequently, in Rehberg v. Paulk, the United States extended Brioschi immunity to law enforcement officers who testify before a grand jury and also made clear, albeit in dicta, that this would apply to preliminary hearing testimony in those states that allow felony charges to be brought by information, coupled with a requirement for a preliminary hearing, in lieu of indictment by a grand jury. See __ U.S. __, 132 S.Ct. 1497 (2012). The Court stated:

> Finally, contrary to petitioner's suggestion, recognizing absolute immunity for grand jury witnesses does not create an insupportable distinction between States that use grand juries and those that do not. Petitioner argues that it would make no sense to distinguish for purposes of § 1983 immunity between prosecutions initiated by the return of a grand jury indictment and those initiated by the filing of a complaint or information, and he notes that 26 States permit felony prosecutions to be brought by information. Brief for Petitioner 23–24. But petitioner draws the wrong analogy. In States that permit felony prosecutions to be initiated by information, the closest analog to a grand jury witness is a witness at a preliminary hearing. Most of the States that do not require an indictment for felonies provide a preliminary hearing at which witnesses testify. See LaFave § 14.2(d), at 304, and n. 47, 307, and n. 60. The lower courts have held that witnesses at a preliminary hearing are protected by

5

the same immunity accorded grand jury witnesses, see, e.g., Brice v. Nkaru, 220 F.3d 233, 239, n. 6 (C.A.4 2000); Curtis v. Bembenek, 48 F.3d 281, 284–285 (C.A.7 1995) (citing cases), and petitioner does not argue otherwise, see Tr. of Oral Arg. 51.

Id. at 1510-11. Not surprisingly, several federal courts of appeal have since concluded that Brioschi immunity does extend to preliminary hearing testimony given Rehberg. E.g., Handy v. City of Sheridan, __ Fed. App'x __, 2016 WL 66170, at *11 (10th Cir. 2016) (unpublished); Franks v. Temple Univ., 514 Fed. App'x 117, 122 (3d Cir. 2013) (unpublished).

Finally, the Supreme Court reaffirmed in Rehberg that Brioschi's absolute immunity extends not just to the testimony given but also to an alleged conspiracy to commit the perjury. The Court stated:

> This means that a grand jury witness has absolute immunity from any § 1983 claim based on the witness' testimony. In addition, as the Court of Appeals held, this rule may not be circumvented by claiming that a grand jury witness conspired to present false testimony or by using evidence of the witness' testimony to support any other § 1983 claim concerning the initiation or maintenance of a prosecution. Were it otherwise, "a criminal defendant turned civil plaintiff could simply reframe a claim to attack the preparation instead of the absolutely immune actions themselves." Buckley v. Fitzsimmons, 509 U.S. 259, 283, 113 S.Ct. 2606, 125 L.Ed.2d 209 (1993) (KENNEDY, J., concurring in part and dissenting in part); see also Dykes v. Hosemann, 776 F.2d 942, 946 (C.A.11 1985) (per curiam) ("[J]udges, on mere allegations of conspiracy or prior agreement, could be hauled into court and made to defend their judicial acts, the precise result judicial immunity was designed to avoid"). In the vast majority of cases involving a claim against a grand jury witness, the witness and the prosecutor conducting the investigation engage in preparatory activity, such as a preliminary discussion in which the witness relates the substance of his intended testimony. We decline to endorse a rule of absolute immunity that is so easily frustrated.[1]

Rehberg, 132 S.Ct. at 1506-07. In footnote 1, however, the Court cautioned:

> Of course, we do not suggest that absolute immunity extends to all activity that a witness conducts outside of the grand jury room. For example, we have accorded only qualified immunity to law enforcement officials who falsify affidavits, see Kalina v. Fletcher, 522 U.S. 118, 129–131, 118 S.Ct. 502, 139 L.Ed.2d 471 (1997); Malley v. Briggs, 475 U.S. 335, 340–345, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986), and fabricate evidence concerning an unsolved crime, see Buckley, 509 U.S., at

6

272–276, 113 S.Ct. 2606.

Id. at 1510 n.1. And, more recently, the Ninth Circuit in Lisker v. City of L.A. observed that it had not extended Brioschi immunity to cover "'non-testimonial' acts, such as 'tampering with documentary or physical evidence or preventing witnesses from coming forward'" and, in Lisker, the entry of false information in a "Murder Book." 780 F.3d 1237, 1241-45 (9th Cir. 2015).

In this case, Shaw's claims that defendants Conley and Jennings provided false testimony during their preliminary hearing or trial testimony, or both, are foreclosed by the fact they have absolute immunity under Brioschi and Rehberg. This leaves the allegation that Conley, in addition to committing perjury himself, suborned the commission of perjury of another witness.

Assuming (without deciding) that the latter falls outside Brioschi immunity because it involves conduct that goes beyond any conspiracy for *Conley* to provide false testimony, Shaw still cannot sue given the bar imposed by the Supreme Court in Heck v. Humphery, 512 U.S. 477 (1994). In Heck, the Supreme Court concluded that a prisoner cannot recover damages in a § 1983 action where the judgment would necessarily imply the invalidity of the prisoner's conviction. In other words, Shaw cannot sue on any claim for money damages for the acts of alleged perjury or suborning of perjury until his conviction has been either reversed, expunged, or called into question by the issuance of a writ of habeas corpus or other appropriate postconviction relief. Id. at 486-87. And here, there is no allegation that any of these has occurred. In fact, Shaw is in custody and an examination of publicly available records indicates he is presently appealing his conviction and sentence to the North Dakota Supreme Court.

7

### C. Shaw's claim re search of personal belongings

In what almost appears to be an afterthought, Shaw alleges in one sentence that his personal belongings were illegally searched on June 26, 2014. This single conclusory statement, however, does not satisfy the most basic of pleading requirements; Shaw does not indicate what was searched, who performed the search, under what conditions the search was conducted, or, even more importantly, why the search was unlawful. Consequently, at least as of this point, Shaw has failed to properly state a claim for damages with respect to the alleged unlawful search.

### D. Other deficiencies in Shaw's complaint

Under Eighth Circuit precedent, Shaw needed to affirmatively state that he was seeking to sue Conley and Jennings in their individual capacities in order to state a claim against them personally for damages. See, e.g., Remington v. Hoopes, 611 Fed. App'x 883, 884-85 (8th Cir. 2015) ("[W]hen a plaintiff's complaint is silent or otherwise ambiguous about the capacity in which the plaintiff is suing the defendant, our precedent requires us to presume that the plaintiff brings suit against the defendants in only their official capacities."); Johnson v. Outboard Marine Corp., 172 F.3d 531, 535 (8th Cir. 1999).

Also, the Grand Forks Police Department is not a suable entity in terms of any claim for damages under § 1983. Cf. De La Garza v. Kandiyohi Jail, Corr. Inst., 18 Fed App'x 436 (8th Cir. 2001) (unpublished per curiam opinion); Christianson v. McLean County Sheriff's Dept., No. 1:10–cv–058, 2010 WL 3421083, at *4 (D.N.D. Aug. 3, 2010) report and recommendation adopted 2010 WL 3421041 (Aug. 17, 2010) (McLean County Sheriff's Department is not a suable entity from which damages can be collected under North Dakota law). And, even if was, Shaw has failed to demonstrate any basis for its liability given that there is no respondeat superior liability under §

1983.

## III. CONCLUSION AND RECOMMENDATION

The undersigned **RECOMMENDS** that Shaw's claims be **DISMISSED WITHOUT PREJUDICE** unless he files an amended complaint curing the above deficiencies on or before the deadline for filing objections to this Report and Recommendation as set forth below.

## NOTICE OF RIGHT TO FILE OBJECTIONS

Pursuant to D.N.D. Civil L.R. 72.1(D)(3), any party may object to this recommendation within fourteen (14) days after being served with a copy of this Report and Recommendation. Failure to file appropriate objections may result in the recommended action being taken without further notice or opportunity to respond. Because Shaw is incarcerated the deadline for filing objections shall be extended to March 8, 2016.

Dated this 8th day of February, 2016.

*/s/ Charles S. Miller, Jr.*
Charles S. Miller, Jr., Magistrate Judge
United States District Court